# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

PATRICIA M. BRUNDIGE,                )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )          CAUSE NO.: 1:15-CV-222-TLS
                                     )
CAROLYN COLVIN,                      )
Acting Commissioner of the Social    )
Security Administration,             )
                                     )
          Defendant.                 )

## OPINION AND ORDER

The Plaintiff, Patricia M. Brundige, seeks review of the final decision of the

Commissioner of the Social Security Administration denying her application for Disability

Insurance Benefits. The Plaintiff alleges that her disability began on March 20, 2012. An ALJ

conducted a one-hour hearing in December 2013, at which the Plaintiff—who was represented

by an attorney—her husband, and a vocational expert (VE) testified. On April 22, 2014, the ALJ

found that the Plaintiff has the following severe impairments: degenerative disc disease, mild

carpal tunnel syndrome, history of bilateral rotator cuff repair, depression, pain disorder,

asthma/COPD/allergies, plantar fasciitis, and gastrointestinal disorders including alcoholic

pancreatitis, irritable bowel syndrome, diverticulosis/diverticulitis, and history of multiple hernia

repairs. However, the ALJ ultimately concluded that the Plaintiff is not disabled. On June 24,

2015, the Appeals Council denied the Plaintiff's request for review, making the ALJ's decision

the Commissioner's final decision. The Plaintiff then initiated this civil action for judicial review

of the Commissioner's final decision.

# BACKGROUND

The Plaintiff was 48 years old at the time of her alleged onset date, and she turned 50 during the pendency of her claim. The Plaintiff has a high school education and a beauty college certificate. Her past relevant work includes cafeteria attendant, which was unskilled and light per the Dictionary of Occupational Titles (DOT) and medium as performed; cashier, which was light as performed as part of the cafeteria attendant job, and; food worker, which was an unskilled light job per the DOT and medium as she performed it.

## A.     The Plaintiff's Testimony

The Plaintiff believes she cannot work because of pain from head to toe. (R. 51.)

> My stomach is the worst. I can get really sharp pains. What's worse now is the swelling and the pain in there that it's causing, and it goes through to my back, which initially will set off my back problems and my hips, and which initially will go down my legs to me knees, once in a while to my toes. I have the sciatic pains. Plantar fasciitis, which is very painful in my feet.

(*Id.*) The Plaintiff also testified about her concern with "trigger thumb" on her right hand. (*Id.*) The Plaintiff admitted that her pain medications, Neurontin and Bentyl, "take the worst of the pain out," but that she continued to have pain. (R. 52.) Side effects included sleepiness, dizziness, and forgetfulness. (R. 53.) The Plaintiff testified that she had to take a nap "[a]lmost every day," because she did not sleep more than four hours at a time, but also stated that Zoloft helped her sleep at night. (R. 61–62.) She did not take more heavy-duty narcotics because she had become "hooked on them" in the past. (R. 58.)

In describing a typical day, the Plaintiff stated that she got up in the morning, tried to do her stretches, and fed the dog. "And basically I'm up and down off of the sofa. I try to do—I visit

the restroom often, very often. Most of the time I'm down, either sitting or laying." (R. 56–57.) On a good day, she would visit the restroom about six times over a period of about six hours. On a bad day, when she was experiencing diarrhea, she would use the restroom at least 10 to 12 times. (R. 57.) According to the Plaintiff, she had more bad days than good days in a week. A bad day involved "staying in bed, going back and forth to the restroom, when everything's hurting. When you hurt so bad you can't get up and go take your medicines and make it feel a little bit better." (*Id.*)

The Plaintiff had not had any recent emergency room visits, but wanted to go about a month earlier for "a real bad bout of vomiting and diarrhea for four hours straight," but decided to stay home when it subsided. (R. 53.)

For household chores, the Plaintiff did dishes, but did not finish the job if there were a lot of them. She also dusted. Vacuuming hurt her back too much. The Plaintiff did some grocery shopping, but her husband did the majority of the shopping.

**B.      Testimony from the Plaintiff's Husband**

Mr. Brundige testified that he worked from 7 a.m. to 3:15 p.m., and that when he arrived home, his wife was usually laying down in bed, he would fix his own dinner. Mr. Brundige thought that his wife had more bad days than good days. He stated that he did all of the chores outside the house, and everything inside except dusting and the dishes.

**C.      Treating Sources**

In December 2013, the Plaintiff obtained opinions from two of her treating physicians,

Gastroenterologist Imad Horani, and pain specialist Jon Karl.

**1.**     *Dr. Horani*

In a Medical Source Statement, Dr. Imad Horani listed the Plaintiff's diagnoses to include chronic alcoholic pancreatitis, diverticulosis, acute pancreatitis, irritable bowel syndrome, abdominal pain, and diarrhea reflux. (R. 774.) His prognosis was that this was a chronic disease. Dr. Horani cited abnormal blood work values, abnormal imaging studies, and distended small bowel in the left upper quadrant as the clinical findings and objective signs for her medical conditions. Dr. Horani described her pain as abdominal and epigastric "occurring daily with bouts of increasing pain waxing and waning." (R. 775.) With respect to her functional limitations at full time employment, he indicated that she "may need day off from time to time" for "abdominal pain not controlled by medication." (R. 776.) He opined that she would miss work more than three times per month, and that she would be able to stay on task in unskilled work for 80% to 84% of a workday.

**2.**     *Dr. Karl*

Dr. Karl's Medical Source Statement (R. 795–99) included diagnoses of lumbar spondylosis, cervical sprain/strain, cervical pain, lumbar radiculitis, lumbar pain, lumbar degenerative disc disease, rotator cuff tear, and myalgia. He thought that her prognosis for her medical conditions was "chronic pain lifelong." (R. 795.) The clinical findings and objective signs included limited range of motion with pain in her upper extremities; limited flexion, extension, and rotation in the cervical/lumbar region; and shoulder pain with range of motion.

Dr. Karl reported that the Plaintiff's symptoms were pain, muscle tightness, numbness, and right thumb catching and locking. He characterized her pain as sharp and deep in the neck, low back, lower extremities, shoulders, and both hands, which increased with activity. The pain was treated with neurontin, which caused drowsiness and difficulty in concentration. With respect to the Plaintiff's functional limitations, Dr. Karl states that she could walk one block, sit for fifteen minutes before needing to get up, and stand for ten minutes.

Dr. Karl estimated that the Plaintiff could work ten hours per week, and that if she worked an eight-hour day, she would need to take unscheduled breaks two to three times per day for an average of thirty minutes due to pain, fatigue, and medication side effects. The most weight she could lift, and then only rarely, was ten pounds. According to Dr. Karl, the Plaintiff could never reach with her left arm or perform fingering with her left hand, but could occasionally perform handling with her left hand. For her right extremities, she could never perform handling with the right hand, but could occasionally reach with her right arm and perform fingering. Dr. Karl opined that the Plaintiff would be absent from work as a result of her impairment more than three days per month.


**D.      Non-Treating Sources**

The Plaintiff had a consultative physical exam with Dr. H.M. Bacchus on July 27, 2012. Also in July, Dr. Corcoran, a non-examining State Agency physician found that the Plaintiff was limited to light exertional work with additional non-exertional limitations related to climbing, stooping, and concentrated exposures to wetness and hazards. Dr. Sands, a nonexamining State Agency physician, reviewed these findings and agreed.

The Plaintiff had a consultative psychological exam with Dr. Sherwin Kepes on July 26, 2012. He diagnosed major depressive disorder that was recurrent, and moderate and pain disorder associated with a general medical condition, specifically her low back. He also diagnosed "Abdominal." (R. 440.) In August and October 2012, non-examining State Agency psychologists found no severe mental impairment.

**E.      ALJ Decision (Five-Step Evaluation)**

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); 42 U.S.C. § 423(d)(1)(A) (defining a disability under the Social Security Act as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); § 423(d)(2)(A) (an applicant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy"). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so she moved on to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments. An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's severe impairments are

degenerative disc disease, mild carpal tunnel syndrome, history of bilateral rotator cuff repair, depression, pain disorder, asthma/COPD/allergies, plantar fasciitis, and gastrointestinal disorders including alcoholic pancreatitis, irritable bowel syndrome, diverticulosis/diverticulitis, and history of multiple hernia repairs. The ALJ concluded that the Plaintiff's right "trigger thumb" was not a severe impairment.

At step three, the ALJ considered numerous impairment listings to determine whether the Plaintiff had an impairment, or combination of impairments, that meets or medically equals the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's impairments did not to meet or equal a listed impairment.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ concluded that the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she was not able to climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She was not able to reach overhead, but could frequently reach in other directions and could frequently finger. The Plaintiff's RFC required that she avoid concentrated exposure to wetness and hazards of slick surfaces and unprotected heights, and to irritants. The ALJ found that the Plaintiff was unable to engage in complex or detailed tasks but could perform

simple, routine, and repetitive tasks consistent with unskilled work, and was able to sustain and attend to tasks throughout the workday.

Once the RFC is established, the ALJ uses it to determine whether the claimant can perform her past work and, if necessary, whether the claimant can perform other work in the economy. 20 C.F.R. § 416.920. At this final step of the evaluation, the ALJ determined that, in light of the Plaintiff's age, education, and RFC, there were unskilled jobs that existed in significant numbers in the national economy that she could perform. These included usher, rental consultant, and bakery production worker. The VE testified that most employers would provide two breaks of a 5 to 15 minute duration, and a lunch break. Most employers would also allow an additional 2 to 3 breaks a week of the 5 to 15 minute duration, but that anything more than that would not be tolerated. Additionally, an individual who missed 2 to 3 days a month or more would not be able to maintain competitive employment. According to the VE, employers require employees to be on task at least 85% of the time.


## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

On appeal, the Plaintiff contends that the ALJ improperly evaluated the opinions of her treating pain specialist, Dr. Karl, and her treating Gastroenterologist, Dr. Horani; failed to consider her mental and physical impairments in combination; improperly evaluated the Plaintiff's credibility, and; failed to incorporate the moderate degree of limitation in

concentration, persistence, or pace into her hypothetical to the vocational expert.

## A.     Credibility Determination

An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong. *Craft*, 539 F.3d at 678; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *see also Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, when "the determination rests on 'objective factors or fundamental implausibilities rather than subjective considerations such as a claimant's demeanor, appellate courts have greater freedom to review the ALJ's decision.'" *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (brackets omitted) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Additionally, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations. *Simila*, 573 F.3d at 517 (first citing 20 C.F.R. § 404.1529(c)(2)–(4); and then citing *Prochaska*, 454 F.3d at 738).

The ALJ accurately cited the testimony provided by the Plaintiff and her husband regarding the restrictions that were caused by pain and frequent diarrhea. The ALJ listed the Plaintiff's severe impairments, and noted that they could reasonably be expected to cause the alleged symptoms. However, she found that the statements by the Plaintiff and her husband concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. She wrote:

> Several factors, especially when considered in conjunction with each other, support a finding that the allegations made by the claimant and her husband are not entirely credible; they also do not support a more restrictive assessment of the claimant's residual functional capacity. First, the record reflects that the claimant is able to drive, go out alone, pay bills, count change, handle bank accounts, care for her personal needs independently, take her medications without reminders, and prepare simple foods (such as sandwiches and green beans). In addition, she is able to feed her dog, wash dishes (although she reportedly must take breaks), dust, use a telephone, stay in contact with her friends, and watch television. Both she and her husband stated prior to the hearing that the claimant had no difficulty getting along with others and that she was able to follow instructions. Next, there is no evidence in the record that the claimant has been hospitalized on an inpatient basis for a psychiatric reason or that she sought counseling since March 20, 2012. Furthermore, it is noted that she tested positive for THC in February 2013. Moreover, the record indicates that the claimant has a somewhat sparse work history. A review of her earnings record indicates that she never earned more than about $15,000.00 per year and that most of her annual earnings were less that $8,000.

(R. 25 (citations omitted).)

Next, the ALJ discussed the medical evidence that she believed supported a finding that the allegations were not entirely credible and made a more restrictive assessment of her residual functional capacity implausible. The ALJ devoted considerable time to a discussion of the Plaintiff's mental condition, stating that the Plaintiff's presentation with regard to her mental functioning was largely within normal limits. Turning to the Plaintiff's physical condition, the ALJ noted that the physical examinations were also largely within normal limits, except for the

following:

> decreased bowels sounds at times, abdominal tenderness, decreased range of
> motion in her shoulders, tenderness over her shoulders . . . back[,] and SI joints,
> an antalgic gait at times, clumsiness with tandem walking, difficulty walking on
> her heels and toes, difficulty squatting, slow movements, mild wheezing at times,
> and decreased range of motion in her neck, right hip, knees, and back.

(R. 26.) She noted that upper extremity muscle strength had, at the worst, been graded at 4 out of 5 for any 12-month consecutive period of time, and that there was no evidence of significant deficits in reflexes or sensation. The ALJ highlighted the fact that there was no evidence of muscle atrophy, "which might be reasonably expected bases on the allegations by the claimant and her husband." (R. 26.) Further, the Plaintiff did not use an assistive device to ambulate.

The ALJ cited other medical evidence that supported her determination that the allegations by the Plaintiff and her husband were not entirely credible. First, she cited the lack of evidence of any bowel obstruction during the time the Plaintiff was hospitalized for a few days for abdominal pain. And although the Plaintiff had been diagnosed with recurrent pancreatitis, the doctor who performed the EGD in late 2013 stated that the Plaintiff should not need to take pancreatic enzyme replacement. Additionally, the Plaintiff had actually gained weight since March 2012, despite having severe gastrointestinal impairments. The ALJ noted a MMPI-2 profile, which indicated that the Plaintiff was "'extremely' sensitive to changes in her bodily functions, which could result in some degree of symptom exaggeration." (R. 27.)

A claimant's "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). However, the absence of objective medical evidence is just one factor to be considered when considering subjective complaints of pain. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.

1995). An individual's statements about the intensity and persistence of pain, or about the effect the pain has on her ability to work, may not be disregarded solely because they are not substantiated by objective medical evidence. *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) (citing SSR 96-7p); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("Even when . . . the claimant attributes her pain to a physical rather than a psychological cause, the administrative law judge cannot disbelieve her testimony solely because it seems in excess of the 'objective' medical testimony."); *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("[The governing] regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding."); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (An ALJ may not "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.") (citation omitted); *Clifford v. Apfel*, 227 F.3d 863, 871–72 (7th Cir. 2000).

With respect to the other factors to consider, the Seventh Circuit has instructed that:

> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994) (citation omitted).

Here, the ALJ solicited details of the Plaintiff's activities and the extent to which the

Plaintiff could perform those activities without experiencing pain. The ALJ also recounted the medications that the Plaintiff took, and inquired into treatment she received. However, the ALJ did not link any of this testimony to a specific allegation the Plaintiff made about her restrictions. In other words, the ALJ did not indicate which of the Plaintiff's statements were or were not credible. *See Chase v. Astrue*, 458 Fed. Appx. 553, 558 (7th Cir. 2012) (stating that ALJ's use of phrase "not entirely credible" was "meaningless boilerplate" and remanding case so ALJ could fully assess the plaintiff's credibility as part of the RFC determination). "The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010).

The Plaintiff alleged restrictions that were not all related to the same impairment. Some, such as experiencing 5 to 6 bad days per week where she was in the restroom 10 to 12 times in the morning for 15 to 20 minutes each time, were related to her gastrointestinal impairments. Others, such as not being able to pick up a gallon of milk or perform most household chores, related to the issues with her rotator cuff, degenerative disc disease, carpal tunnel, or other like impairments. Still others, such as needing to nap for several hours a day, stemmed from poor sleep, depression, or a combination of the two. Although the ALJ did not clarify which statements or symptoms she found credible and which she did not, the Court can assume, based on the RFC and questions to the VE, that the ALJ did not credit the Plaintiff's testimony that she experienced 5 to 6 bad days per week where she needed to be in the restroom for a bulk of the morning, or her testimony that she needed to nap for several hours almost daily. However, the ALJ does not explain how the Plaintiff's limited daily activities undermined these claims. *See,*

*e.g.*, *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (criticizing ALJ's reliance on claimant's ability to perform household tasks because inability to get through the day without lying down every hour does not indicate ability to work even sedentary job). An ALJ should explain inconsistencies between daily living activities, the medical evidence, and the individual's complaints of pain. *Zurawski*, 245 F.3d at 887 (finding the ALJ's listing of daily activities was not sufficient to undermine claims of disabling pain, without explaining the inconsistencies); *see also Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence.") (internal citation omitted). Moreover, even if the ALJ had articulated a basis for disbelieving 5 to 6 bad days or the need for daily naps, the RFC does not account for any bad days; it provides that the Plaintiff would be able to sustain and attend to tasks throughout the workday.

Neither does the ALJ's decision explain how testing positive for THC lowered the Plaintiff's credibility or was inconsistent with the pain and limitations she claimed. The same is true of the other factors the ALJ cited in her Decision—a sparse work history and lack of treatment for psychiatric issues. There is no connection drawn between these factors and the Plaintiff's credibility or the specific limitations she alleged. The ALJ notes the Plaintiff's MMPI-2 profile indicating an extreme sensitivity to changes in her bodily functions, which could result in some degree of symptom exaggeration, but does not discuss what this means with respect to her functional limitations. "If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The question whether the experience is more acute because of a psychiatric condition is

different from the question whether the applicant is pretending to experience pain, or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second.").

The ALJ also notes that the Plaintiff gained weight despite having severe gastrointestinal impairments: she weighed 157 pounds in February 2012; 165 pounds in August 2012; and 186 pounds in December 2013. This was presumable intended to be evidence that the Plaintiff's statement about the frequency of bad days was not credible. But without a medical opinion on the issue, the ALJ may not properly draw the inference that, because the Plaintiff has gained weight, it is unlikely that her stomach pain and bouts with diarrhea are as severe as she claims. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong.").

The ALJ's determination was not "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Without an adequate explanation, the ALJ's Decision does not evidence that she considered factors outside the lack of objective medical evidence to find that the Plaintiff exaggerated the limiting effect of her impairments. While the lack of objective medical evidence is certainly relevant, according to governing standards, it cannot be the sole reason for discrediting the Plaintiff. *See, e.g.*, *Castille v. Astrue*, 617 F.3d 923, 929–30 (7th Cir. 2010) (stating that, although lack of objective evidence was cited in the ALJ's credibility determination, the ALJ also discussed a report casting doubt on the plaintiff's credibility, the plaintiff's failure to adhere to prescribed treatment, her daily activities, and inconsistencies in the plaintiff's own testimony).

On remand, the ALJ must articulate which of the statements from the Plaintiff and her husband the ALJ finds to be unworthy of credence, and the basis for those findings.

**B.      Opinions of Treating Physicians**

An ALJ is tasked with evaluating opinion evidence when making a determination of disability. A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). An ALJ must offer good reasons for discounting a treating physician's opinion. *Id.* Even when the treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely, (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) how supportable the doctor's medical opinion is, (4) how consistent the doctor's opinion is with the record, (5) the doctor's specialization, and (6) other factors that might support or contradict the doctor's opinion—to determine what weight to give the opinion. *Id.* Thus, an ALJ may discount a treating source's medical opinion if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). An ALJ may also discount a treating physician's opinion if it reveals bias due to sympathy for the patient. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). The ALJ must give "good reasons" to support the weight he ultimately assigns to the treating source's opinion. § 404.1527(c); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).

The ALJ assigned less weight to the opinions of Dr. Horani and Dr. Karl than to the earlier opinions of the State Agency physicians. She noted that Drs. Horani and Karl had the

benefit of examining and treating the Plaintiff, but that the State Agency physicians had the benefit of reviewing more of the record as a whole, and were specifically trained in evaluating disability for the Social Security Administration. The ALJ concluded that the objective medical evidence and the Plaintiff's activities were more supportive of the State Agency opinion. Specifically, the Plaintiff did not use an assistive device to ambulate, there was no evidence that she had reflex or sensory deficits, muscle atrophy, loss of grip strength, or more than relatively mild loss of muscle strength in her extremities. Also, the Plaintiff was able to care for her personal needs, drive, and go out alone.

The ALJ has not offered a sound explanation for rejecting the opinions of Dr. Horani and Dr. Karl and adopting, instead, the State Agency physicians' conclusion that the Plaintiff was able to perform light work with some environmental and postural limitations. With respect to the amount of the record reviewed, and the specific training in evaluating disabilities for the SSA, those are statements that would apply to every state agency doctor and thus do not provide a logical bridge. The ALJ could have just as easily said that "[m]ore weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). It is not even clear why the ALJ thought it was important that the State Agency physicians reviewed "more of the record as a whole." Neither of the treating physicians suggested that they were offering an opinion about the Plaintiff's limitations for all her impairments—only those that they treated. The amount of the record reviewed, and the specific training State Agency physicians receive are

not factors that are pertinent to whether the opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence. Moreover, as the Plaintiff points out, the State Agency physicians last reviewed the Plaintiff's records in October 2012, but she had major surgery on her left shoulder in December 2012, and continued to seek medical treatment thereafter.

The remaining rationale, that the State Agency physicians deserved more weight because they were supported by the objective medical evidence and the Plaintiff's activities, is not supported by substantial evidence. In rendering this conclusion, the ALJ does not discuss any objective medical evidence that even touches on Dr. Horani's opinion that the Plaintiff was likely to be absent from work more than three times per month for abdominal, epigastric pain. Nor does the ALJ indicate how caring for personal needs, driving, or going out alone is inconsistent with Dr. Horani's opinion. The State Agency Assessments do not even purport to address functional limitations that might be brought about by abdominal pain. Dr. Karl indicated that the Plaintiff would need to take 2 to 3 unscheduled breaks lasting 30 minutes or longer in an 8-hour period for pain, fatigue, and medication side-effects related to impairments in her lumbar region and shoulder. He also thought that she would be absent from work more than 3 days per month. Dr. Karl did not indicate that the Plaintiff needed an assistive device to walk, or that she would be so incapacitated that should would have suffered muscle atrophy, so his opinion cannot be said to be unsupported or inconsistent based on those reasons as cited by the ALJ.

Final decisions of the Social Security Administration must be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g). The decision must construct a logical bridge between the facts in the record and its ultimate conclusions. *McKinzey v. Astrue*, 641 F.3d

884, 889 (7th Cir. 2011); *Villano v. Astrue*,556 F.3d 558, 562 (7th Cir. 2009). The ALJ's decision, while quite thorough in certain regards, does not construct that bridge when it comes to the credibility of the Plaintiff or to the medical opinions of her treating physicians. Accordingly, the Court cannot say on this record that the ALJ's decision was supported by substantial evidence.

## C.    Hypothetical to Vocational Expert

In Step 2 of her analysis, the ALJ found that the Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. (R. 22.) The Plaintiff argues that the ALJ was thus required, under *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), to supply the VE with hypothetical that included the terms "concentration, persistence, or pace." Although the ALJ stated that the Plaintiff would be limited to simple, routine, and repetitive tasks consistent with unskilled work, and could not engage in complex or detailed tasks, this was not found to be sufficient in *O'Connor-Spinner*. 627 F.3d at 620 ("limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace"). Although the Seventh Circuit noted that it had not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases," the exceptions the court cited do not appear applicable in this case. In any event, because the Court is remanding this matter for further consideration, the ALJ should additionally consider whether the VE was adequately advised of all of the Plaintiff's limitations.

**CONCLUSION**

For the reasons stated above, the decision of the ALJ is reversed and remanded for further consideration consistent with this Opinion.

SO ORDERED on August 23, 2016.

     s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT